## Lawrence E. Sherman v. Rutland Hospital, Inc.

[500 A.2d 230]

No. 83-509

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Daley, J. (Ret.), Specially Assigned**

Opinion Filed August 9, 1985

*Donald R. Powers*, Brandon, for Plaintiff-Appellee.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Allen, C.J.** The plaintiff, Lawrence Sherman, brought suit for wrongful termination of employment by the defendant, Rutland Hospital, Inc., and obtained a judgment of $30,000. His claim was that termination procedures, contained in the defendant's person-

nel policies manual, had been made a condition of his employment agreement, and had not been followed upon his termination.

Upon appeal, the defendant first contends that, because the plaintiff was not hired for a definite term, he was an "at will" employee and so could be terminated at any time with or without cause. The defendant next contends that the evidence was legally insufficient to support a finding that the termination provisions of the manual had been made a part of the plaintiff's employment agreement. Finally, the defendant argues that the termination provisions were not breached.

The evidence at trial indicated that the plaintiff interviewed for the position of manager of the housekeeping staff on October 19, 1978. On that day he submitted an application which stated, as his reason for leaving his present employer, "Stable home, better salary." During the interview, he stated that he was looking for a position which would provide him with a stable home situation so his daughters could stay in one high school, a secure job, and a better salary.

At a second interview in November, he was given a copy of the hospital's personnel policy manual. Following that interview, he read the manual with particular interest in the area of job security. The discharge procedures set out in the manual read in part as follows:

> Progressive discipline, for violations of Hospital and/or departmental policies, usually follows this sequence:
>
> Step 1—First Offense: Verbal/Counselling Session
> Step 2—Second Offense: Written/Counselling Session
> Step 3—Third Offense: Warning Notice
> Step 4—Discharge

The manual also stated that immediate discharge might follow certain types of flagrant misbehavior.

After the second interview, the plaintiff received a telephone call in which the position was offered to him and he accepted. Upon being asked at trial if there was any connection between the manual and his decision to accept employment, the plaintiff answered: "In what was previously said that it had excellent benefits, an excellent benefit package and job security."

Upon beginning work at the hospital in January, 1979, the plaintiff signed a card which read:

I have read and I understand my copy of the personnel policies of the Rutland Hospital. I have familiarized myself with the information in this book and understand that it constitutes the general personnel policies of this Hospital, and that in some instances policies may be added to or amended by more specific policies in each department and that I am governed by them.

The content of this manual is subject to change or amendment by the Board of Directors or the Executive Vice President. Personnel will be notified of any changes through the normal channels.

Sometime in the Fall of 1979, the plaintiff was verbally informed by his supervisors that his aggressive management style was creating some problems among his staff. In February, 1980, he received a written evaluation which indicated that the problem still existed, but that he had made "positive progress in this area." There was also evidence that, later in the Spring of 1980, the plaintiff was again verbally informed of dissatisfaction with his management style.

In August, 1980, after a meeting between the housekeeping staff and the Director of Personnel, the hospital's Assistant Administrator concluded that the plaintiff's immediate removal was necessary to prevent a total collapse of service by the housekeeping employees. The plaintiff declined an opportunity to resign, and was terminated on August 20, 1980. He requested a meeting with the hospital's Executive Vice President, following which he received an additional month's severance pay but not rein- statement.

In submitting the case to the jury, the court instructed them in part as follows:

Now an employment contract at will is a contract for an indeterminate as opposed to a fixed or definite period of time. An employment contract at will may be terminated by either party with or without cause at any time unless the parties have contracted that certain procedures must take place before discharge. . . . [T]he first question for you to decide is whether the disciplinary and dismissal procedures in the Personnel Policy Manual form a binding and enforceable part of Mr. Sherman's employment contract.

The court also instructed the jury on the nature of express and implied contracts.

## I.

The defendant's first contention upon appeal is that, because the plaintiff was not hired for a definite term, he was an "at will" employee, and as such could be terminated at any time with or without cause. Thus, it contends, the trial court's charge that the "at will" agreement could be modified by the parties by an express or implied agreement concerning termination procedures was contrary to the holding in *Jones* v. *Keogh*, 137 Vt. 562, 409 A.2d 581 (1979), refusing to extend enforceable contract rights to an "at will" employee.

It is the generally accepted rule that an employment contract for an indefinite term is an "at will" agreement, terminable at any time, for any reason or for none at all. *Brower* v. *Holmes Transportation, Inc.*, 140 Vt. 114, 117, 435 A.2d 952, 953 (1981), *overruled on other grounds, Soucy* v. *Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983); *Mullaney* v. *C. H. Goss Co.*, 97 Vt. 82, 87, 122 A. 430, 432 (1923). But it does not follow from this rule that an employee and an employer may not contractually bind themselves to certain termination procedures in the absence of an employment agreement with a fixed term. To so argue "misconstrues the at-will rule, which is only a rule of contract construction, as a rule imposing substantive limits to the formation of a contract." *Pine River State Bank* v. *Mettille*, 333 N.W.2d 622, 628 (Minn. 1983). That court went on to state:

> It should not be necessary for an employee to prove a contract is of "permanent" employment or for a specified term in order to avoid summary dismissal if the parties have agreed otherwise. There is no reason why the at-will presumption needs to be construed as a limit on the parties' freedom to contract. If the parties choose to provide in their employment contract of an indefinite duration for provisions of job security, they should be able to do so.

*Id.*; see also *Helle* v. *Landmark, Inc.*, 15 Ohio App. 3d 1, 7, 472 N.E.2d 765, 772-73 (1984).

Thus, the fact that the plaintiff was not hired for a definite period does not prevent him and his employer from bargaining

for, and agreeing to be bound by, termination provisions set forth in the manual, even though those provisions may not be binding against the employer as to any other employee. Such an agreement does not present the mutuality of obligation problem which led this Court to refuse to impose unbargained-for termination provisions as a matter of public policy in *Jones, supra.*

Such an agreement is what the plaintiff here alleges. He cites the pre-employment conduct of both himself and his employer as evidence of an express or implied agreement to incorporate the termination provisions of the employee manual into his own employmentagreement. Therefore, this case does not present the issue of whether the employee manual itself created enforceable contract rights generally. See, e.g., *Wagenseller* v. *Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985) (hospital's four-step disciplinary procedure,.set forth in employee's manual, by its terms or by employer's conduct, may have encouraged reliance thereupon, rendering that procedure binding upon hospital). It merely presents a factual issue of what the parties agreed to between themselves. Accordingly, the trial court's instruction was not in error.

## II.

The defendant's second contention upon appeal is that the evidence was legally insufficient to show that the manual provisions were made a part of the plaintiff's employment agreement. The defendant does not, however, address its challenge to the evidence of an actual agreement arising out of the circumstances under which the plaintiff was hired. Instead, the defendant argues that the manual standing alone creates no enforceable rights, and that the manual contains no promissory language.

To the extent that the defendant argues that the manual, standing alone, creates no enforceable rights, the plaintiff does not disagree. The plaintiff argued at trial that the manual's terms were in fact bargained for by the parties, and that the parties agreed to make those terms a part of the plaintiff's employment agreement. The court instructed the jury in accordance with this theory, and the jury made a finding in the plaintiff's favor. Therefore, the defendant's argument here does not address the plaintiff's claim and so is of no avail.

The defendant also argues that the essential elements of a binding contract are absent, because the manual contains no definite promissory language. Again, this argument fails to address the plaintiff's theory of the case. Such language is not necessary to the plaintiff's claim that the terms were, in effect, incorporated by reference into his individual employment agreement.

## III.

■ Finally, the defendant argues that the plaintiff was afforded all of the rights which the manual required, because the manual provided that decisions by the Executive Vice President shall be final. That language appears in the "Grievance Procedure" section of the manual, not the "Progressive Discipline" section. The jury was instructed to determine whether the grievance procedures applied at all to the plaintiff's termination, and if so, whether the procedures were followed; whether any failure to follow the procedures was due to the plaintiff or the defendant; and whether any failure of the plaintiff's was waived by the defendant's conduct. These issues were properly left for decision by the jury, which made a finding in the plaintiff's favor.

*Affirmed.*