## Jack E. Benoir v. Ethan Allen, Inc.

[514 A.2d 716]

No. 84-271

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed July 18, 1986

*Gary D. McQuesten* and *Brian J. Grearson* of *Valsangiacomo, Detora & McQuesten*, Barre, for Plaintiff-Appellee.

*Michael F. Hanley* and *Robert P. Gerety, Jr.*, of *Plante, Richards, Terino & Hanley, P.C.*, White River Junction, for Defendant-Appellant.

**Hill, J.** This case concerns an employment contract dispute. Trial was by jury, a verdict being rendered in favor of plaintiff in the amount of $29,317.59. The superior court denied defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Defendant appeals. We affirm.

The plaintiff, Jack Benoir, worked at defendant's Randolph woodworking plant in Randolph, Vermont for fourteen years prior to the incident underlying this dispute. On February 10, 1982, while working at his stock saw station, plaintiff kicked a board off the conveyor belt. According to defendant, the board struck one of plaintiff's fellow workers, causing him to lose his balance. Defendant investigated the incident and concluded that plaintiff had engaged "in horseplay that endangered the life or limb of another employee" in violation of company rules and regulations contained in the employee's handbook. On February 22, 1982, defendant discharged plaintiff from its employ.

The jury found that plaintiff was discharged in violation of the terms and conditions of his employment contract with defendant providing for "permanent" employment upon completion of a three-month probationary period. Defendant argues on appeal that plaintiff was an employee at will who could be discharged at

any time and for any reason. The company further contends that the trial court erroneously charged the jury on this issue, and that plaintiff failed to introduce competent evidence on the issue of damages.

■ "It is the law in this jurisdiction that 'an employment contract for an indefinite term is an "at will" agreement, terminable at any time, for any reason or for none at all.' " *Larose* v. *Agway, Inc.*, 147 Vt. 1, 3, 508 A.2d 1364, 1365-66 (1986) (quoting *Sherman* v. *Rutland Hospital, Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985)). However, while the term "permanent," when used in an employment contract with reference to a term of employment, normally means nothing more than indefinite employment, see, e.g., *Russell & Axon* v. *Handshoe*, 176 So. 2d 909, 915 (Fla. Dist. Ct. App. 1965), a contract for "permanent" employment will not be considered terminable at will "if the employer has, by express language or clear implication, foreclosed his right to terminate except for cause." *Drzewiecki* v. *H & R Block, Inc.*, 24 Cal. App. 3d 695, 703, 101 Cal. Rptr. 169, 174 (1972); see also *Handshoe, supra*, 176 So. 2d at 915 (citing Annot., 35 A.L.R. 1432 (1925)).

"In determining whether there exists an implied-in-fact promise for some form of continued employment courts have considered a variety of factors . . . includ[ing] the personnel policies or practices of the employer . . . ." *Pugh* v. *See's Candies, Inc.*, 116 Cal. App. 3d 311, 327, 171 Cal. Rptr. 917, 925 (1981); see, e.g., *Greene* v. *Howard University*, 412 F.2d 1128, 1133-35 (D.C. Cir. 1969); *Cleary* v. *American Airlines, Inc.*, 111 Cal. App. 3d 443, 451-53, 168 Cal. Rptr. 722, 727-28 (1980); *Pine River State Bank* v. *Mettille*, 333 N.W.2d 622, 629-30 (Minn. 1983). Defendant's policies and practices regarding termination were set out in an employee handbook.[1] The jury found that this handbook constituted a part of a binding and enforceable contract between the

---

[1] This section entitled "Rules of the Game" provided in pertinent part:

These [rules] are necessary in order for your plant to function in an orderly, efficient manner. You will want to know these regulations to avoid any difficulties. Violation of these rules will subject you to warning, suspension or dismissal. The following list is presented as a guide, and is not intended to be all-inclusive. The usual sequence is: Warning, Suspension, and Discharge. For repeated violations, however, the first step and even the second step may be by-passed if the nature and extent of the violation warrants more severe disciplinary action. . . .

parties.[2] Although management reserved "the right to vary work schedules as needed," the court concluded that the "Rules of the Game"[3] provision in the employee handbook definitively foreclosed defendant's right to terminate employees in the absence of cause, and instructed the jury accordingly.

Defendant contends that, even if the handbook could be construed as foreclosing the company's right to terminate except for cause, the contract was ambiguous and therefore for the jury to construe. See *Rich* v. *Chadwick*, 139 Vt. 508, 510, 430 A.2d 1280, 1282 (1981) ("When the contract is ambiguous, the function of the jury is invoked to determine its meaning as an issue of fact.").

■ Unlike the contract in *Rich*, we do not believe that the essential term of the contract at issue here was in any way ambiguous. The termination provisions contained in the employee handbook set up a three-step disciplinary procedure for violation of listed rules: warning, suspension and discharge. The list was admittedly not all-inclusive; however, defendant's plant manager conceded that management referred to the handbook whenever an issue arose concerning the possible discharge of a company employee. Although defendant reserved the right to bypass steps in the disciplinary process for repeated violations, the "Rules of the Game" contract provision cannot be construed as being consistent with an at-will employment relationship. In short, the handbook, by clear implication, foreclosed defendant's right to terminate without cause.

Where "the essential terms of a contract are expressly stated in clear and definite terms, the interpretation of the writing is for the court." *William Feinstein Brothers, Inc.* v. *L. Z. Hotte Granite Co.*, 123 Vt. 167, 170, 184 A.2d 540, 542 (1962). In the case at bar, the trial court concluded that the handbook precluded defendant from arbitrarily terminating plaintiff's employ, and properly instructed the jury to proceed to the issue of cause if it found

---

[2] Defendant does not contest this point on appeal. It is worth noting, however, that all employees were coached through the basic parts of the employee handbook during their orientation period. Sometime during the first thirty days of employment, the employee's supervisor repeated this process, and the employee was asked to sign the employee handbook. The handbook was then placed in the employee's personnel file.

[3] See *supra* note 1.

that defendant was contractually bound by the provisions contained therein.[4]

We also reject defendant's claim that the contract fails for indefiniteness. Although the employee handbook does not contain an express wage agreement, defendant does not dispute the fact that it paid plaintiff set wages, including periodic raises, over a fourteen-year period. Nor does defendant dispute the fact that plaintiff was receiving $4.78 per hour at the time of termination. This course of conduct, in conjunction with defendant's contractual obligation to pay its employee a "fair wage in return for a fair day's work," rendered the contract sufficiently definite to allow for enforcement.

"The measure of damages for wrongful termination of an employment contract is the amount that the plaintiff would have earned absent the breach, less what he actually earned or could have earned by the exercise of reasonable diligence during the contract period after his termination." *Ashe* v. *Sunshine Broadcasting Corp.*, 90 Ill. App. 3d 97, 100, 412 N.E.2d 1142, 1145 (1980) (citations omitted). At trial, plaintiff made clear he only sought damages for the period from the date of discharge to the date of trial. He introduced evidence to show that he was available for work, that there was work to be done at defendant's plant, and that he was unable to find alternative employment during this period. To establish the amount of his damages, he introduced evidence of his rate of pay at date of discharge and his gross wages for the two years prior to termination.

Defendant asserts that evidence of plaintiff's past wages is in no way relevant to what plaintiff would have earned if he had stayed on in the company's employ. Thus, according to defendant, the jury's award must be set aside as it is based on pure speculation. We disagree.

"The general rule for determining damages is that the jury should estimate the amount within reasonable limits based upon the evidence before it." *Lemnah* v. *American Breeders Service, Inc.*, 144 Vt. 568, 580, 482 A.2d 700, 707 (1984). Thus, "if there is evidence from which an estimation may be made with reasonable certainty," a jury has the authority to make an assessment. *Id.*

---

[4] Defendant has not appealed the jury's finding that plaintiff was terminated without cause, conceding at oral argument that plaintiff did not engage "in horse-play that endangered life or limb or another employee."

■ Evidence of plaintiff's past employment history, coupled with proof of the company's operating history during the post-discharge period, provided the jury with a conservative estimate of appellee's damages, but one which was clearly grounded in fact. Although plaintiff perhaps should have introduced evidence as to what a stock saw operator earned at defendant's plant during the period for which he sought damages, we can find no basis to reverse the jury's verdict on grounds of speculation or conjecture.

*Affirmed.*