**Edward H. Ross v. Times Mirror, Inc., Times Mirror Magazine, Inc. d/b/a Ski Magazine, and George Bauer**

[665 A.2d 580]

No. 94-224

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 7, 1995

14 

*Edward H. Ross,* pro se, Waterbury, Plaintiff-Appellant.

*Robert B. Hemley* and *Lucy T. Brown* of *Gravel and Shea,* Burlington, for Defendants-Appellees.

**Allen, C.J.** Plaintiff appeals from an order of the Chittenden Superior Court granting defendants' summary judgment motion on plaintiff's claims of wrongful discharge, age discrimination, and tortious interference with an employment contract. We affirm.

Plaintiff was employed by defendant Times Mirror, Inc. (TMI) in 1980 as a sales representative for some of its magazines and worked out of the New York office. In 1984, plaintiff was promoted to New England sales manager of SKI magazine and transferred to Burlington, Vermont. Shortly after arriving in Vermont, difficulties arose between plaintiff and his new supervisor, advertising manager Ellen McVickar. McVickar complained to both plaintiff and her supervisor, defendant George Bauer, that plaintiff's communication

with the New York office was inadequate. In June 1988, McVickar issued a written warning to plaintiff, which was placed in his personnel file. Later that same month, plaintiff received a letter from Bauer placing him on probation, explaining that if he did not improve his communication, he could be terminated. Plaintiff's correspondence improved and he was taken off probation in September 1988.

Although plaintiff received a laudable annual review in May 1989, the friction continued to plague plaintiff and McVickar's relationship. In June 1989, an important advertiser wrote a letter to Bauer which criticized McVickar and praised plaintiff. Convinced that plaintiff had enticed the advertiser to write the letter, McVickar recommended to Bauer that he terminate plaintiff. Bauer then scheduled an August meeting with him in New York. When plaintiff did not attend the meeting, Bauer terminated plaintiff by phone.

Plaintiff believed he was terminated without good cause and in retaliation for the embarrassing letter. He brought the present action advancing three wrongful discharge theories: (1) breach of an oral contract to employ him until his retirement, (2) promissory estoppel based on a promise of permanent employment and promises implicit in TMI's employee handbook and a progressive disciplinary policy and (3) breach of an implied covenant of good faith and fair dealing. Plaintiff also claimed that his termination constituted age discrimination, and he accused defendant Bauer of interference with his employment contract with TMI. Defendants denied the allegations, and after several months of discovery moved under V.R.C.P. 56 for summary judgment.

The court granted defendants' motion, concluding that permanent employment status, even if a correct characterization, did not rebut the presumption of at-will employment and that any promised employment until retirement was barred by the Statute of Frauds. It also concluded that a disclaimer in TMI's personnel handbook negated any effect defendant's disciplinary policy had on the at-will relationship. It rejected plaintiff's implied covenant of good faith and fair dealing claim for lack of adequate factual support on the element of bad faith. Finally, the court concluded that plaintiff had not raised a genuine issue of fact with respect to either age discrimination or contract interference.

In reviewing a grant of summary judgment, we apply the same standard as the trial court, namely, that the motion should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled

to judgment as a matter of law. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact. *Id.* In the present action, plaintiff has not met his burden on any of his claims.

Plaintiff argues that an oral contract for permanent employment was made when he was hired by TMI. Thus, it was his understanding that his employment would be continuous until plaintiff's retirement, and terminable only for just and sufficient cause. Alternatively, plaintiff argues that he detrimentally relied on TMI's oral representations that his employment would be continuous until he reached retirement.

In *Benoir v. Ethan Allen, Inc.*, 147 Vt. 268, 270, 514 A.2d 716, 717-18 (1986), we stated that "the term 'permanent,' when used in an employment contract with reference to a term of employment, normally means nothing more than indefinite employment." An employer must do something more than promise continuous employment to take an employee out of an at-will status. "'[A]n employment contract for an indefinite term is an "at-will" agreement, terminable at any time, for any reason or for none at all.'" *Larose v. Agway, Inc.*, 147 Vt. 1, 3, 508 A.2d 1364, 1365-66 (1986) (quoting *Sherman v. Rutland Hospital, Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985)). In addition, there is no support in the record for plaintiff's allegations that any oral representations for continuous employment were made to plaintiff at the time of hiring or later. See V.R.C.P. 56(e) (nonmoving party may not rest on unsupported allegations). Plaintiff's deposition reveals that only salary and sales territory were discussed at his hiring meeting. Moreover, he presented no evidence of detrimental reliance. Plaintiff's contract and promissory estoppel claims fail.

Plaintiff next claims that certain established employment policies limited TMI's discretion to terminate him. Specifically, plaintiff contends that TMI's personnel handbook, which contained a list of conduct warranting discipline, created an enforceable promise to terminate only for cause. Plaintiff also maintains that defendant had instituted a progressive three-step disciplinary procedure, upon which TMI employees relied. In plaintiff's view, these policies suffi-

ciently rebut the at-will presumption. The trial court concluded that the disclaimer in TMI's handbook effectively trumped any claim that the at-will relationship had been unilaterally modified by either the handbook or disciplinary policy. Plaintiff initially presented this claim to the trial court under the rubric of promissory estoppel. The trial court addressed it as a unilateral contract modification claim. On appeal, plaintiff challenges only the trial court's contract modification analysis. While summary judgment was appropriate, we disagree with the trial court's reasoning. See *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613-14, 572 A.2d 921, 925 (1990) (Supreme Court is not bound by reasoning of trial court).

 The effectiveness of a disclaimer depends on the circumstances. See, e.g., *McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 457 (N.M. 1990) (disclaimer rebutted by evidence to contrary of parties' norms of conduct and expectations). Notably, in *Benoir*, 147 Vt. at 271, 514 A.2d at 718, we concluded that a written disciplinary procedure used whenever a possible discharge arose altered the at-will relationship, despite the fact that the employer had expressly reserved the right to bypass the disciplinary process. See also *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 568-72, 613 A.2d 1277, 1278-80 (1992) (defendant's handbook stating that employment relationship could be terminated at any time did not defeat plaintiff's claim of retaliatory discharge where employer promised not to retaliate for use of grievance procedure). Without such a principle, an employer could have it both ways — enjoying the morale-enhancing benefits of fair procedures most of the time, but relying on a handbook disclaimer whenever it chose to jettison its procedures in a particular case. See *Leikvold v. Valley View Community Hosp.*, 688 P.2d 170, 174 (Ariz. 1984) (employer cannot selectively abide by or treat as illusory officially announced employment policies). Because the disclaimer is not dispositive, we must determine if plaintiff raised a genuine issue of material fact as to whether defendant's handbook or disciplinary procedure unilaterally modified plaintiff's at-will employment agreement.

 We have stated on numerous occasions that the presumption of an at-will employment contract is a rule of contract construction that can be overcome by evidence to the contrary. See, e.g., *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 462, 652 A.2d 466, 470 (1993). An employer may limit its discretion to terminate an employee at will by instituting company-wide personnel policies. See *Thompson v. St.*

*Regis Paper Co.*, 685 P.2d 1081, 1088 (Wash. 1984). To determine whether a particular policy modifies the at-will relationship or creates an enforceable promise of specific treatment, we are guided by our recent decision in *Taylor*, in which we held that provisions of a personnel policy manual may unilaterally alter the at-will relationship. 161 Vt. at 464, 652 A.2d at 471. Relying on *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 892 (Mich. 1980), we reasoned that:

> [W]here an employer chooses to establish [personnel] policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. . . . It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Taylor*, 161 Vt. at 464-65, 652 A.2d at 471.

■■ Employee manuals or policy statements do not automatically become binding agreements. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Whether a particular policy is meant to be a unilateral offer is an issue of proof. See *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983) (whether proposal is meant to be unilateral contract is determined by outward manifestations of parties). Only those policies which are definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself will be enforced. *Id.*; *Gilbert v. Durand Glass Mfg. Co.*, 609 A.2d 517, 522 (N.J. Super. Ct. App. Div. 1992) (enforceable policies must constitute accurate representation of the policies which the employer was authorized to make). General statements of policy will not meet the requirements of a unilateral contract. *Pine River*, 333 N.W.2d at 626; see *Thompson*, 685 P.2d at 1085 (employer's statements that terminations will be handled in a fair, just and equitable manner were general policy statements and did not imply contract to discharge only for cause). In contrast, definitive policies, which expressly or impliedly include a promise for specific treatment in specific situations, especially when the employer expects the employee to abide by the same, may be enforceable in contract. *Thompson*, 685 P.2d at 1088. We note that an

employer may not always be bound by statements if it conspicuously and effectively states that the policy is not intended to be part of the employment relationship. *Id.*

In the present case, plaintiff argues that the catalogue of reasons for employee discipline was sufficient proof to imply a promise to terminate only for cause or after using a progressive disciplinary procedure. TMI's handbook, which was circulated to all employees, identified specific conduct that warranted discipline. The list was preceded by the following disclaimer:

> While the Company expressly reserves the right to termi-
> nate the employment relationship at will, conduct such as,
> but not limited to, the examples below are causes for
> disciplinary action up to and including discharge: . . . .

■ The noninclusive list of actionable conduct is a general state-ment of defendant's policy to discipline its employees. No promise for just cause termination or for specific treatment in a specific situation can be implied from this statement. See *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 838 (Pa. Super. Ct. 1986) (list of conduct requiring disciplinary action does not imply just cause dismissal). In fact, the policy expressly leaves the disciplinary sanction to the employer's discretion. Contrary to plaintiff's assertion, defendant's handbook policy, by itself, does not create an enforceable promise to terminate for cause or only after disciplinary action had been taken.

Plaintiff also insists that TMI failed to use an established progres-sive disciplinary procedure before terminating him. According to plaintiff, the procedure provided for an initial warning, then a probationary period if the employee did not improve. Both the warning and notification of probation were communicated in writing to the employee and recorded in the employee's personnel file. At the end of the probationary period, the employee would be reinstated or terminated. Plaintiff contends this procedure implied a promise to terminate for good cause and only after using the three-step proce-dure. Defendant TMI denies that the three-step procedure exists. No written policy is in evidence.

■ As a threshold matter, we note that disciplinary procedures are not inconsistent or in conflict with the at-will doctrine. *Sherman*, 146 Vt. at 208, 500 A.2d at 231. They may, however, create an enforceable promise to use those procedures. *Id.*; see *Continental Air Lines*, 731 P.2d at 711 (employee at-will may be able to enforce termination procedures under unilateral contract modification theo-

ry); *Suburban Hosp., Inc. v. Dwiggins*, 596 A.2d 1069, 1074-75 (Md. 1991) (if employee is not afforded established job termination procedures, employee may have breach of contract claim); *Pine River*, 333 N.W.2d at 631 (employer breached employment contract because it did not use disciplinary procedure; had it done so, plaintiff might have corrected deficiencies to employer's satisfaction). While disciplinary procedures do not necessarily limit the grounds for dismissal, they may limit how a dismissal is carried out. Compare *Taylor*, 161 Vt. at 465-66, 652 A.2d at 471-72 (handbook disciplinary policy created just cause termination requirement), with *Suburban Hosp.*, 596 A.2d at 1074-75 (disciplinary procedure did not impose just cause termination, only procedural requirements). The critical inquiry is, of course, whether the procedure amounted to an enforceable promise of specific treatment in a specific circumstance.

■ A proffered procedure or practice may be enforceable, if it is clearly established and uniformly and consistently applied throughout the company. *Toussaint*, 292 N.W.2d at 892; see *Gilbert*, 609 A.2d at 522 (unwritten disciplinary policy, publicized and implemented throughout company, constituted enforceable promise to use procedure before terminating at-will employee). An employer's official statement does not have to be in writing in order to be enforceable. See *Gilbert*, 609 A.2d at 522 (unwritten disciplinary policy to sanction employees for lateness enforceable). Requiring such a formality, in this context, would favor form over substance.

■ Considering the above parameters, the fact that a written policy is not in evidence is not fatal to plaintiff's claim. In addition, defendant's denial does not end the matter. See V.R.C.P. 56(e) (adverse party may not rest upon mere allegations or denials of adverse party's pleadings). However, plaintiff has offered only his own experience and hearsay statements regarding what "he had heard" about other employees. While his own experience is relevant, it does not, by itself, suggest a definitive company-wide practice. See *Gilbert*, 609 A.2d at 518-22 (plaintiff established prima facie breach of contract claim by submitting personnel records of employees who were subjected to unwritten disciplinary policy and affidavits of managers who attested to using alleged policy). Further, plaintiff's recollection about what other employees had told him is insufficient to support his opposition to summary judgment. See 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2738, at 489-94 (1983) (hearsay statements contained in deposition not supported by

specific facts admissible in evidence are insufficient to raise genuine issues). In sum, plaintiff has failed to establish a prima facie case that defendant's practice of disciplining employees constituted an implied and enforceable promise to terminate an employee only after using the progressive procedure.

Next, plaintiff argues that the court erred in concluding that no genuine issue of material fact existed as to his claim that defendant violated the implied covenant of good faith and fair dealing. Relying on *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993), the trial court ruled that such a covenant could coexist with an at-will relationship, but concluded that plaintiff had made an insufficient showing of bad faith to create a genuine issue of fact. Again, we agree that summary judgment was appropriate, but disagree with the trial court's reasoning.

 It is axiomatic that an at-will employee "may be discharged at any time with or without cause, 'unless there is a *clear and compelling* public policy against the reason advanced for the discharge,'" *Payne v. Rozendaal*, 147 Vt. 488, 491, 520 A.2d 586, 588 (1986) (quoting *Jones v. Keogh*, 137 Vt. 562, 564, 409 A.2d 581, 582 (1979)) (emphasis in original), or unless the at-will relationship has been modified. See, e.g., *Taylor*, 161 Vt. at 464-65, 652 A.2d at 471 (handbook may modify at-will). To imply a covenant as to tenure in an unmodified at-will contract irreconcilably conflicts with the employment-at-will doctrine, *Murphy v. American Home Products Corp.*, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983), and results in unreasonable judicial interference into what is a private relationship. Accord *Spanier v. TCF Bank Savings FSB*, 495 N.W.2d 18, 21 (Minn. Ct. App. 1993); *Thompson*, 685 P.2d at 1086-87. Further, implying such a covenant "would seem to subject each discharge to judicial incursions into the amorphous concept of bad faith." *Parnar v. Americana Hotels, Inc.*, 652 P.2d 625, 629 (Haw. 1982). Therefore, we decline to recognize the implied covenant of good faith and fair dealing as means of recovery where the employment relationship is unmodified and at-will and the employee is challenging the dismissal based on a right to tenure.

In the present case, plaintiff believed that he was entitled to permanent or continuous employment until defendant had just cause. Because plaintiff's theory was based solely on an implied tenure, we do not decide whether we would recognize such a covenant in the context of nontenure terms of at-will employment contracts, such as accrued benefits. See, e.g., *Fortune v. National Cash Register Co.*, 364

N.E.2d 1251, 1257 (Mass. 1977) (bad faith termination to prevent salesperson from obtaining earned commission actionable under breach of implied covenant of good faith and fair dealing).

In rejecting this theory, we note that at-will employees are not without remedies for wrongful termination. In addition to statutory protections such as Vermont's Fair Employment Practices Act (VFEPA), 21 V.S.A. § 495, relief may be had under several common law theories. See *Taylor*, 161 Vt. at 464-65, 652 A.2d at 471 (employee handbook may unilaterally modify employment relationship); *Foote*, 158 Vt. at 571, 613 A.2d at 1279-80 (promissory estoppel may modify employment contract otherwise terminable at will); *Payne*, 147 Vt. at 491, 520 A.2d at 588 (recognizing public policy exception to at-will doctrine).

Plaintiff next asserts violations of VFEPA. Specifically, he argues that TMI unlawfully terminated him on the basis of age, unlawfully retaliated against him, and subjected him to unlawful harassment. In support of these allegations, he points to a memorandum from McVickar to defendant Bauer in which McVickar recommended terminating plaintiff. She stated that she was unwilling to deal with plaintiff's uncooperative attitude until he "decided to retire at 55" and recommending plaintiff's termination. Plaintiff suggests that the fact that his responsibilities were covered by his former assistant, a much younger person, also indicates age discrimination.

VFEPA prohibits employment discrimination on the basis of age. 21 V.S.A. § 495(a). The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and its precedent provide useful analytical tools. To establish a prima facie case, plaintiff must show that (1) he was within the protected age group, (2) he was qualified for the position, (3) he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Viola v. Philips Medical Sys. of North America*, 42 F.3d 712, 716 (2d Cir. 1994). Plaintiff has not presented a prima facie case of age discrimination.

The memorandum, read in full, simply supports defendant's proffered reason for plaintiff's termination. McVickar complained that plaintiff:

> continues to flaunt authority and follow his own schedule in a most cavalier manner. He has been warned, put on probation, reprimanded etc. on many occasions and fre-

quently. There is a limit to the acceptance of this behavior and the limit has arrived. . . . I feel, as you do that we will not sit still with a situation where we are put in a position of waiting until *Ted* decides to leave SKI . . . . I refer to Ted's monologue . . . where Ted [said he would] stay on a few more years . . . until he can retire at 55 . . . .

(Emphasis in original.)

Defendant's decision to assign the only other person in SKI magazine's two-person office to cover a portion of plaintiff's territory three months after his termination strikes us as a reasonable stop-gap, rather than prima facie evidence of age discrimination. Plaintiff has failed to present sufficient evidence to reasonably indicate that his termination was motivated by his age.

■ Plaintiff's allegations of retaliation must also fail. VFEPA prohibits retaliation when an employee "has lodged a complaint . . . or has cooperated with the attorney general or a state's attorney in an investigation of" discriminatory practices, or an "employer believes that such employee may lodge a complaint or cooperate with [the authorities]." 21 V.S.A. § 495(a)(5). Plaintiff has presented no evidence that he engaged in any activity protected by the statute; therefore, he may not rely on this remedy.

■ Finally, the claims of tortious interference against defendant George Bauer are meritless. Bauer is not a third party, but an employee of TMI, and plaintiff has not explained how Vermont law provides a remedy in such circumstances. See *Giroux v. Lussier*, 126 Vt. 555, 561-62, 238 A.2d 63, 67 (1967) (outsider has no legal right to deceptively invade area of another's agreement). In addition, plaintiff's brief describes what is, at most, personal differences with Bauer, falling short of stating a cause of action. There was no error in granting defendant's motion for summary judgment.

*Affirmed.*