19-1207-cv
*Smith v. Shaw's Supermarkets, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of April, two thousand twenty.

Present:
>       DEBRA ANN LIVINGSTON,
>       RAYMOND J. LOHIER, JR.,
>       WILLIAM J. NARDINI,
>               *Circuit Judges*.

_____

CHERYL A. SMITH,

>       *Plaintiff-Appellant*,

>       v.                                                           19-1207-cv

SHAW'S SUPERMARKETS, INC.,

>       *Defendant-Appellee.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | JAMES G. LEVINS, Tepper Dardeck & Levins, LLP, Rutland, VT. |
| For Defendant-Appellee: | MARTHA VAN OOT, Jackson Lewis P.C., Portsmouth, NH. |

1

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Cheryl A. Smith ("Smith") sued her former employer, Shaw's Supermarkets, Inc. ("Defendant"), alleging breach of an implied contract of employment in violation of Vermont law. She now appeals from an opinion, order, and judgment of the U.S. District Court for the District of Vermont (Reiss, *J.*), entered on April 1, 2019, granting summary judgment in favor of Defendant. We review grants of summary judgment *de novo*, "construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018) (internal quotation marks and citation omitted). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*      \*      \*

The parties agree that Smith's employment was terminated following her involvement in a dispute with Leslie Jay Bowen ("Bowen"), a customer and former employee of Defendant, during which Smith touched Bowen without his consent. On appeal, Smith argues that her termination was improper because it violated the progressive discipline procedure contained in Defendant's Team Member Handbook (the "Handbook"), which Smith contends established an implied contract to fire employees only for cause. Under the progressive discipline procedure, Smith argues that she should have been given a three-day suspension and a final letter of warning, rather than being terminated.

2

We disagree. The district court correctly determined that Defendant's Handbook, together with its actual practices, failed to create an implied contract to fire its employees only for cause. Under Vermont law, the at-will employment relationship may be altered by "personnel policies or practices of the employer," including those "set out in an employee handbook." *Benoir v. Ethan Allen, Inc.*, 514 A.2d 716, 718 (Vt. 1986) (internal quotation marks and citation omitted). The Supreme Court of Vermont has found such implied contracts exist where the employer's policies "are definitive in form, communicated to employees, and evince an employer's intent to bind itself," *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 428 (Vt. 2001) (citing *Ross v. Times Mirror, Inc.*, 665 A.2d 580, 584 (Vt. 1995)), such as where a handbook set out an "elaborate system governing employee discipline and discharge" that was "mandatory in tone," *Dillon v. Champion Jogbra, Inc.*, 819 A.2d 703, 705, 708 (Vt. 2002).

Here, by contrast, the Handbook was permeated with conditional and cautionary language that communicated the absence of an intent to be bound to the use of progressive disciplinary measures. The Handbook states that Defendant "*generally* follows a progressive corrective action process that *may* include" steps such as verbal warnings and suspensions, but notes that "[n]otwithstanding this general practice, there may be some performance issues and policy violations that are so severe that immediate corrective action including termination may be necessary at [Defendant's] *sole discretion*." A. 36 (emphasis added). The subsequent sentences reiterate that "[i]n [Defendant's] *sole discretion*, it may skip some or all of the steps in the progressive corrective action process," and that Defendant "reserves the right to determine the appropriateness and level of counseling[] or corrective action in each situation, including whether immediate termination of employment is warranted." *Id.* (emphasis added). The Handbook separately sets forth a non-exclusive list of reasons for immediate termination that begins by

3

reiterating the default at-will status of all employees. *Id.* at 36–37. Thus, the Handbook's language considered as a whole unambiguously communicates that Defendant reserves the right to use progressive discipline at its discretion, rather than binding itself to do so in every case or "promis[ing] . . . specific treatment in specific situations." *Ross*, 665 A.2d at 584. Furthermore, the Handbook's multiple broad disclaimers unequivocally stating that the at-will relationship remains intact, while not dispositive, *see Dillon*, 819 A.2d at 708, further reinforce the absence of any objective indicia of an intent to be bound, *see* A. 16 ("This Handbook is not a contract of employment or a guarantee of continued employment . . . [and] [o]nly the Chief Executive Officer of the Company has the authority to make an employment agreement for anything other than employment at-will and then only in writing and signed by or duly authorized by the Chief Executive Officer."); *id.* at 36 ("These corrective action procedures do not alter the at-will employment relationship."); *id.* at 37 ("This Team Member Handbook is not intended to create a contract, nor is it to be construed to constitute a contract of employment. Both [Defendant] and [employee] retain the right to terminate our employment relationship at any time, and for any reason, except as otherwise provided by an enforceable written agreement signed by [Defendant's] CEO or designee."). Given the Handbook's unambiguous language, the district court did not err in determining, as a matter of Vermont law, that the Handbook did not create an implied contract between Smith and Defendant that Defendant would fire Smith only for cause.

Moreover, none of the deposition testimony cited by Smith supports the inference that Defendant's practices created an implied contract. While Smith's supervisor testified that she was familiar with the Handbook's outline for progressive discipline, she also affirmed that she took "guidance from Human Resources . . . [i]n "all cases." *Id.* at 239. This open-ended testimony does not support the inference that Defendant bound itself to a uniform, consistent enforcement of

4

the Handbook's progressive discipline policy. Likewise, the testimony of another employee that she was familiar with the progressive discipline policy and believed that employees "get quite a few written warnings before termination," *id.* at 267, and the testimony of the Regional Human Resources Manager that the progressive discipline procedure constituted "normal practices" but that the steps taken for corrective action "would depend on the situation," *id.* at 226, do not support such an inference. Given the absence of evidence of an implied contract to fire employees only for cause, the district court properly awarded summary judgment in favor of Defendant.

Finally, even if Defendant had been bound by the policies set out in its Handbook, the record is devoid of evidence that these policies were breached in this case. The Handbook makes clear that violations of the Threats and Violence Free Workplace policy, which covers conduct that "threatens another person's safety . . . or causes them to perceive their safety . . . is threatened," *id.* at 35, as well as violations of the Courtesy, Dignity and Respect Policy, "including quarreling or fighting with . . . other Team Members[] [or] customers," could justify immediate termination, *id.* at 36–37. Given Smith's undisputed involvement in a confrontation at the workplace during which she physically touched Bowen without consent, Defendant's discretionary decision, following an investigation, to terminate Smith's employment without proceeding through the steps of the progressive discipline procedure was entirely consistent with its policies. Accordingly, even assuming the Handbook created an implied contract, Smith's breach of contract claim cannot withstand summary judgment.

We have considered Smith's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
