**Michael BRACE, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORP., Defendant.**

No. 2:94–cv–128.

United States District Court, D. Vermont.

Jan. 23, 1997.

Eileen Morris Blackwood, Blackwood and Kraynak, Burlington, VT, for plaintiff.

Heather Briggs, Carol L. Shea, Asst. U.S. Atty., Downs, Rachlin & Martin, P.C., Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

In this civil action, Michael Brace claims that International Business Machines Corporation ("IBM") discharged him from employment in violation of the Vermont Fair Employment Practices Act ("FEPA"), the Employee Retirement Income Security Act of 1974 ("ERISA"), and Vermont common law. The case was removed pursuant to 28 U.S.C. § 1441(a) and § 1446 from Chittenden Superior Court, where it was commenced.

The parties filed cross-motions for summary judgment (papers 26 and 31). IBM also filed motions to strike (papers 34 and 35). The matter was subsequently referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). The Magistrate Judge granted the motions to strike. He recommended that IBM's motion for summary judgment be granted in part and denied in part, and that Brace's motion for partial summary judgment be denied ("R & R," paper 47). Both parties timely filed objections to the R & R (papers 48 and 49).

A district judge must make a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* For the reasons that follow, this Court adopts the Magistrate's recommendations as to the FEPA count and the ERISA count, and adopts in part and rejects in part the recommendations as to the Vermont common law counts.[1]

### I. *Facts*

The facts of this case for purposes of the summary judgment motions have been thoroughly recited in the R & R, and need not be repeated at length here. Essentially, Brace worked for IBM from February 27, 1978 to July 22, 1991. In 1987 he accepted a transfer to a manufacturing position within the company. In 1987 and 1988 Brace worked a substantial number of overtime hours. In 1988 IBM began to limit overtime hours. Brace disagreed with this decision, and used IBM's "Open Door" policy to appeal work-related decisions to management. The issue was not resolved to Brace's satisfaction, and, moreover, he felt that his manager was treating him unfairly in retaliation for his complaints.

In 1990, Brace was transferred to a new department. He continued throughout this period to make use of the Open Door process to air his grievances with management decisions. In the fall of 1990, IBM's medical department became concerned about Brace's mental state, and suggested that he meet with the company psychiatrist. He did so. The psychiatrist diagnosed Brace as having a narcissistic personality disorder.

In the winter of 1990, Brace again found himself working under a manager with whom he had conflicts. He became increasingly distressed, and on April 1, 1991, cut his wrist in the men's room at work.

Brace was placed on sick leave. In May his doctor recommended that he return to partial and then full employment in a setting in which he felt safe. Brace named two supervisors with whom he felt safe. IBM did not agree with this arrangement.

Instead, while Brace was on sick leave, IBM told him he would be terminated effective June 17, 1991. The company placed him on management-directed time off with pay. Brace's employment was extended, however, to permit him to consider a voluntary termination program. He declined the termination package, and was discharged July 22, 1991, based, according to IBM, on "clear and consistent demonstration of his incompatibili-

---

1. Brace objected to the Magistrate's "recommendation to strike the affidavits of Michael Brace and Dr. Andrew Siegel" (paper 49 at 1). The Magistrate granted the motion to strike pursuant to 28 U.S.C. § 636(b)(1)(A). Under that subparagraph, a district judge may reconsider the magistrate's ruling only where it has been shown that it is clearly erroneous or contrary to law. Brace has not shown that the Magistrate's order was clearly erroneous or contrary to law, and the order will not be reconsidered.

ty with IBM's work environment." IBM gave Brace no specific information about eligibility or applications for its Sickness and Accident Income Plan or its Medical Disability Income Plan. General information concerning the plans was provided to employees in IBM's employee handbook, "About Your Company."

Brace was hospitalized from August 23, 1991 to October 18, 1991. In early 1992, he requested reinstatement. IBM refused to reinstate him. In 1993, the Social Security Administration awarded Brace disability benefits retroactive to April, 1991.

On August 5, 1994, Brace filed an amended complaint, claiming that IBM had violated FEPA by failing to make reasonable accommodations for him as a qualified handicapped individual (Count I); had violated ERISA by failing to provide employee benefits to which he was entitled (Count II); should be estopped from firing him because it failed to keep certain employment-related promises (Count III); breached its contract of employment with him (Count IV); and breached a covenant of good faith and fair dealing (Count V).

## II. Discussion

### A. FEPA Claim

■ After careful review of the file, the R & R, the Plaintiff's objection and the Defendant's response, this Court ADOPTS the Magistrate Judge's recommendation that the motion for summary judgment be granted on this count. Assuming without deciding that Plaintiff is a "handicapped individual" as defined by Vt.Stat.Ann. tit. 21, § 495d(5) (1987), he has failed to demonstrate that he is a "qualified handicapped individual."

Under title 21 § 495d(6) " 'Qualified handicapped individual' means an individual with a handicap who is capable of performing the essential functions of the job or jobs for which he is being considered with reasonable accommodation to his handicap." The only accommodation proposed by Plaintiff was to assign him to a manager with whom he felt safe. It is well settled in this district that the reasonable accommodation an employer must make under FEPA to account for an employee's disability does not include an obligation to transfer that employee solely to allow him to work under a different supervisor. *Mancini v. General Elec. Co.*, 820 F.Supp. 141, 148 (D.Vt.1993). *See also Wernick v. Federal Reserve Bank*, 91 F.3d 379 (2d Cir.1996). Because the Plaintiff has failed to demonstrate that his disability could be reasonably accommodated, an essential component of his prima facie case, Defendant's motion for summary judgment on this claim is GRANTED.[2]

### B. ERISA Claim

After careful review of the file, the R & R, the Defendant's objection and the Plaintiff's response, this Court ADOPTS the Magistrate Judge's recommendation that summary judgment be denied on this count.

Plaintiff claimed that he was unlawfully denied health and disability benefits to which he was entitled, in violation of ERISA, 29 U.S.C. § 1132 (1985 and Supp.1996), and that he was unlawfully discharged to avoid paying him benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140 (1985). The Magistrate found disputed issues of fact precluding sum-

---

**2.** The Magistrate also recommended that summary judgment be granted on the ground that Plaintiff is judicially estopped from claiming that he is capable of working with reasonable accommodation in this proceeding, because he successfully claimed in an application for Social Security Disability Insurance ("SSDI") benefits that he was totally disabled and unable to work. Because the Magistrate's recommendation is adopted based on his analysis of the reasonable accommodation issue, the Court need not address judicial estoppel in this case.

Although judicial estoppel has been applied in a number of cases cited by the Magistrate, the

recent case of *Mohamed v. Marriott International, Inc.*, holding on similar facts that judicial estoppel does not apply, makes clear that the doctrine should be applied with caution, and opines that applying the doctrine under these circumstances would defeat the policy goals of the Social Security Act and the ADA. *Mohamed v. Marriott Intern. Inc.*, 944 F.Supp. 277, 280–81 (S.D.N.Y. 1996). *See also Norris v. Allied–Sysco Food Serv. Inc.*, 948 F.Supp. 1418, 1439–45 (N.D.Cal.1996), and cases cited therein. *But see, Violette v. International Business Machines Corp.*, No. 1:96cv49, slip op. at 5 (D.Vt. July 24, 1996); *McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996).

mary judgment in connection with both issues.

### 1. Entitlement to benefits

An employer may lawfully exclude certain illnesses or disabilities from coverage under an ERISA plan. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). IBM's Medical Disability Income Plan excluded chronic social and personal adjustment problems, and pre-existing conditions which have not significantly deteriorated. IBM objected that Brace's condition was pre-existing. Brace argued that his condition, if pre-existing, had significantly deteriorated. Whether Brace's condition was excluded from coverage as pre-existing involves the resolution of disputed issues of fact, and is inappropriate for summary judgment.

IBM also objected that Brace was suffering from a chronic social and personal adjustment problem, and was excluded from medical disability coverage on that ground as well. Brace argued that his condition was a disorder specifically listed in the *Diagnostic & Statistical Manual of Mental Disorders* (3d ed.rev. 1987) ("DSM III–R"), and did not fit within the definition of an adjustment problem. The interpretation of the phrase "chronic social and personal adjustment problem" likewise must be left for the finder of fact to make.

### 2. Application for benefits

Because IBM has no formal procedure for filing an application for medical disability, a claimant need only make a written or oral communication reasonably calculated to bring the claim to the attention of a party who handles employee benefit matters, or any officer of the employer. 29 C.F.R. 2560.503–1(d) (1997). The Magistrate found that Brace arguably made such a communication on June 6, 1991, before he was terminated, and on March 31, 1992, after he was terminated. IBM objected that Brace never applied for benefits before he was discharged.

As to the first conversation, Brace testified that he spoke with a manager, Edmond Walsh, about IBM medical benefits, and about being released while he was out on medical leave. Brace Dep. at 428 (paper 31, att. 4). Whether this communication was reasonably calculated to bring his claim to the attention of a party responsible for employee benefit matters is an issue of fact to be resolved at trial.

### 3. Discriminatory denial of benefits

In order to establish a prima facie case under § 510, a plaintiff must show that he was 1) entitled to ERISA's protection, 2) qualified for the position, and 3) discharged under circumstances that allow an inference of discrimination. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114–15 (2d Cir. 1988); *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 38 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). Plaintiff was entitled to ERISA's protection because he had the opportunity to obtain benefits under an employee benefit plan. He presented evidence that he was qualified for his position, in that he was performing satisfactorily, at least until early 1991, when his troubles arose with his supervisor. This was not long after IBM medical personnel became concerned about Plaintiff's mental state in the fall of 1990, and not long before Plaintiff was placed on sick leave in April, 1991. Although IBM has disputed that Plaintiff was performing his job satisfactorily, the issue must await resolution by the factfinder.

Plaintiff also has presented sufficient evidence that he was discharged under circumstances giving rise to an inference of discrimination. He was initially placed on sick leave, then his status was changed to "management-directed time off." Thereafter he was discharged. Given that Plaintiff's burden at the prima facie state is *de minimis,* these circumstances adequately if not overwhelmingly give rise to an inference that he was discharged to avoid paying medical and disability benefits.

The Court agrees that IBM sustained its burden of rebutting the presumption of discrimination by articulating a legitimate, non-discriminatory reason for Brace's discharge. It would then become Brace's burden at trial to prove by a preponderance that the reason articulated was a pretext. *Dister,* 859 F.2d

at 1115. Pretext may be demonstrated either by reliance on the evidence comprising the prima facie case without more, or by additional evidence showing that the proffered explanation is not believable. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir.1994).

Trial courts must be cautious about granting summary judgment to employers when intent to discriminate is at issue, *Gallo v. Prudential Residential Serv. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994), although it remains appropriate in cases lacking genuine issues of material fact. *Chambers*, 43 F.3d at 40. If all permissible inferences are drawn in favor of Brace, a rational jury could conclude, based, among other factors, upon the timing of his discharge, that IBM discharged him to avoid paying medical and disability benefits, rather than because he made a suicide attempt or because he required an inordinate amount of management time.

Accordingly, the Magistrate's recommendation that summary judgment be denied on this count is ADOPTED.

### C. Vermont Common Law Claims

The Magistrate recommended that summary judgment for the Defendant be granted on Plaintiff's breach of contract and some of his promissory estoppel claims. He recommended that summary judgment be denied on the promissory estoppel claim alleging reliance on IBM's Open Door policy, and on the claim alleging breach of the implied covenant of good faith and fair dealing.

IBM objected that ERISA preempted Brace's state law claims, and further argued that summary judgment was appropriate on his remaining state law claims. Brace objected that summary judgment should not be granted on his breach of contract claim, and further argued that summary judgment should be granted in his favor on the promissory estoppel claim.

### 1. Preemption

■ IBM argued that Brace in his deposition testimony modified the allegations of his amended complaint so as to confine his wrongful discharge claims to an allegation that IBM breached a promise to pay him benefits, a claim that would be preempted by ERISA.

In response to a question from IBM about the nature of the contract he alleged was breached, Brace responded:

> I believe that I had a good faith contract with IBM that I would have job security, that I would use the benefits of the company as described in the booklet, that I wouldn't be retaliated against for using open door, that if I was sick I would be out of work on sick leave and that that wouldn't come back to haunt me as per the medical benefits and disability and whatnot described in the benefits program.

Brace Dep. at 476 (paper 28, att. A). In this passage Brace articulated four agreements he thought he had with the company: 1) that he had job security; 2) that he would be able to avail himself of the benefits described in the employee handbook; 3) that he wouldn't be retaliated against if he made complaints through the company's Open Door program; and 4) that he wouldn't be penalized for using sick leave. The second and fourth claims arguably would have been preempted by ERISA. The first and third claims, that IBM agreed to job security and no retaliation, are not preempted. The deposition passage, fairly construed, does not necessarily lead to the conclusion that Brace believed that his discharge was solely for the purpose of denying him benefits. Brace's deposition testimony did not alter or modify the allegations of his complaint, and consequently IBM's preemption argument fails.

### 2. Breach of contract

■ The Magistrate found, assuming that the employee handbook modified the at-will contract of employment to require good cause for termination, that Brace had been terminated for cause, and summary judgment for IBM was warranted on this claim.

■ In Vermont, there is a rebuttable presumption that employment for an indefinite period is employment at will. *McKenny v. John V. Carr & Son, Inc.*, 922 F.Supp. 967, 974 (D.Vt.1996) (citing *Sherman v. Rutland Hosp., Inc.*, 146 Vt. 204, 207, 500 A.2d 230

(1985)). The presumption may be overcome by evidence indicating that the employer expressly or by clear implication foreclosed its right to terminate except for cause. *Benoir v. Ethan Allen, Inc.,* 147 Vt. 268, 270, 514 A.2d 716, 718 (1986).

In determining whether the at-will status has been modified, a court may consider a variety of factors, including the personnel policies or practices of the employer, and actions or communications by the employer reflecting assurances of continued employment. *Id.; Ploof v. Brooks Drug, Inc.,* No. Civ. A. 89–270, 1991 WL 497170, at *2 (D.Vt. Aug. 28, 1991). An employer may unilaterally modify an employee's at will status by adopting written company policies that are inconsistent with that status. *McKenny,* 922 F.Supp. at 977 (citing *Taylor v. National Life Ins. Co.,* 161 Vt. 457, 464, 652 A.2d 466 (1993)). It is for a jury to determine whether a handbook has established contractual rights. *Sargent v. Columbia Forest Prod., Inc.,* No. 2:93–cv–116, 1994 WL 902817, at *3 (D.Vt. Sept. 7, 1994), *aff'd,* 52 F.3d 311 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 256, 133 L.Ed.2d 181 (1995), *and mandate recalled and modified,* 75 F.3d 86 (2d Cir.1996); *Farnum v. Brattleboro Retreat,* —— Vt. ——, 671 A.2d 1249, 1254 (1995).

In this case, Brace claimed that IBM had included within its employee handbook an explicit policy of full employment and job security. IBM countered that the handbook also included a disclaimer, stating that nothing in the handbook should "be construed as creating an express or implied obligation of IBM." (paper 28, att. C at 33).

The effectiveness of such a disclaimer depends on the circumstances of the individual case, and the mere presence of a disclaimer in a handbook is not dispositive. *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 665 A.2d 580, 583–84 (1995); *Mecier v. Branon,* 930 F.Supp. 165, 169 (D.Vt.1996). Whether in this case the handbook modified the at-will employment relationship, or whether the handbook's disclaimer effectively preserved the at-will relationship turns on material facts which remain in dispute.

Likewise, the parties dispute the reason Brace was discharged. IBM claims that Brace was discharged because he made a suicide attempt at work, and that this action constituted violent behavior or the threat of violent behavior, which could result in immediate termination of employment. Brace does not dispute that this event occurred, but claims that the true reasons he was fired were in retaliation for his use of the company's Open Door policy and to avoid paying medical and disability benefits. He argues that IBM itself gave as reason for Brace's dismissal the "clear and consistent demonstration of his incompatibility with IBM's work environment," as evidenced by "his need for an unprecedented amount of management [sic] time at all levels" and "his failure to respond appropriately after repeated counseling by line management, Personnel Managers and Open Door investigators." (paper 31, att. 17).

When employer and employee dispute the reason for an employee's discharge, and the employee presents evidence that the stated reason was not the true reason for the discharge, the issue is one of fact for the jury. *Ainsworth v. Franklin County Cheese Corp.,* 156 Vt. 325, 330, 592 A.2d 871, 874 (1991) (quoting *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 896 (1980)). *See also Taylor v. National Life Ins. Co.,* 161 Vt. 457, 469, 652 A.2d 466, 473 (1993) (to reach the jury on a pretext claim, plaintiff must present some evidence that termination was not for reason stated by employer). Brace has presented evidence that his termination was in retaliation for his use of the Open Door policy (IBM's own statement of reasons for the discharge), and/or to avoid paying medical and disability benefits (the timing of the discharge). He is entitled to have the jury determine what the true reason was for his discharge from employment. Accordingly, the Magistrate's recommendation that IBM's Motion for Summary Judgment on the breach of contract claim be granted is REJECTED, and the motion is DENIED as to that count.

### 3. Promissory estoppel

After careful review of the file, the R & R, the Defendant's objection and the Plaintiff's

response, this Court ADOPTS the Magistrate Judge's recommendation that both parties' motions for summary judgment be denied on this count (Count III) for the reasons stated in his report.

4. Covenant of good faith and fair dealing

After careful review of the file, the R & R, the Defendant's objection and the Plaintiff's response, this Court ADOPTS the Magistrate Judge's recommendation that IBM's motion for summary judgment be denied on this count (Count V) for the reasons stated in his report.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge's Recommendation is ACCEPTED in part and REJECTED in part. Defendant's Motion for Summary Judgment (paper 26) is GRANTED in part and DENIED in part. Plaintiff's Motion for Summary Judgment (paper 31) is DENIED.