The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

## 2018COA136

## No. 18CA0499 Arapahoe Cty Sheriff v Cummings — Government — County Officers — Sheriff — Deputies

The division holds that a 2006 amendment to section 30-10-506, C.R.S. 2017, preserves, to a large extent, the doctrine of at-will employment for deputy sheriffs, but also grants certain due process rights to those deputies.

The division further holds that the statute authorizes sheriffs to grant other rights to sheriffs' deputies, but they are not required to do so.

Finally, the division holds that clear and conspicuous disclaimers preclude, as a matter of law, those portions of plaintiff's implied contract claim that are not based on the due process rights granted by section 30-10-506.

COLORADO COURT OF APPEALS                                      2018COA136

Court of Appeals No. 18CA0499
Arapahoe County District Court No. 16CV32444
Honorable Kenneth M. Plotz, Judge

Michael Cummings,

Plaintiff-Appellee,

v.

Arapahoe County Sheriff's Department and David C. Walcher, individually and
in his capacity as Arapahoe County Sheriff,

Defendants-Appellants.

_____

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE BERGER
Freyre, J., concurs
Bernard, J., specially concurs

Announced September 6, 2018
_____

Mark S. Bove P.C., Mark S. Bove, Denver, Colorado, for Plaintiff-Appellee

Ronald A. Carl, Arapahoe County Attorney, Daniel C. Perkins, Senior Assistant
County Attorney, Erin L. Powers, Senior Assistant County Attorney, Littleton,
Colorado, for Defendants-Appellants

Hall & Evans, L.L.C., Mark S. Ratner, Denver, Colorado, for Amicus Curiae
Colorado Counties, Inc.

# I. Introduction and Summary

¶ 1   This lawsuit pits the Arapahoe County Sheriff (the Sheriff) against one of his former deputies, Michael Cummings, whose employment was terminated by the Sheriff. Cummings contends that the written employment policies promulgated by the Sheriff contained in the Sheriff's employee manual (the Manual) constitute an implied contract of employment that the Sheriff breached when he fired Cummings. In denying the Sheriff's summary judgment motion, the district court agreed with Cummings. The Sheriff brings this interlocutory appeal under C.A.R. 4.2, challenging the district court's denial of summary judgment.

¶ 2   Resolution of this appeal requires us to construe section 30-10-506, C.R.S. 2017, which governs the employment relationship between Colorado's elected sheriffs and the deputies they appoint. It provides in relevant part as follows:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the

1

proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

§ 30-10-506.

¶ 3    In *Seeley v. Board of County Commissioners*, the Colorado Supreme Court authoritatively construed a prior version of this statute, holding that sheriffs' deputies were employees at will and that a sheriff "did not possess the statutory authority to limit his power to discharge [his deputies] 'at his pleasure.'" 791 P.2d 696, 700 (Colo. 1990).

¶ 4    As was its right, the General Assembly legislatively overruled the supreme court's decision by amending the statute in 2006. Hearings on H.B. 1181 before the H. Local Gov. Comm., 65th Gen. Assemb., 1st Sess. (Feb. 7, 2006); *cf. Gallegos v. Phipps*, 779 P.2d 856, 861 (Colo. 1989) (noting General Assembly's enactment of another statute "for the explicit purpose of" overruling the particular case).

¶ 5    We conclude that the General Assembly legislatively partly overruled *Seeley* because, contrary to *Seeley*, the General Assembly decided to grant certain employment rights to the deputies that are, at least in part, inconsistent with the concept of at-will employment

2

as it is known in Colorado law.[1]  Hearings on H.B. 1181 before the

H. Local Gov. Comm., 65th Gen. Assemb., 1st Sess. (Feb. 7, 2006).

But we also know from the plain language of the amended statute

that in other respects, the General Assembly intended to preserve

the doctrine of at-will employment.

¶ 6    Considering the plain language of the 2006 amendments, the

legislative history, and commonly recognized rules of statutory

construction, we conclude that section 30-10-506 does the

following:

- It grants two unwaivable rights to the deputies: the right of

  notification "of the reason for the proposed revocation" of

  their employment, and "an opportunity to be heard by the

  sheriff" before their employment is terminated.

- It requires each sheriff to "adopt personnel policies,

  including policies for the review of revocation of

  appointments," but except for the two statutory rights noted

---

[1] Under Colorado law, an "at will employee" is one whose "employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action."  *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo. 1987).

above, these policies need not be binding and sheriffs may reserve their right to depart from such policies in any particular case or matter. To that extent, the doctrine of at-will employment is preserved.

- It permits a sheriff to promulgate binding employment policies, and if the sheriff elects to do so, those policies are enforceable in accordance with their terms.

¶ 7 Applying this construction of section 30-10-506 to the facts presented in the Sheriff's summary judgment motion, but also considering the dispositive legal effect of clear and conspicuous disclaimers of any contractual relationship, we affirm the district court's denial of summary judgment with respect to the specific rights granted by section 30-10-506, but otherwise reverse the court's denial of summary judgment on Cummings' implied contract claim.

II.     Relevant Facts and Procedural History

¶ 8 Cummings was a deputy sheriff in Arapahoe County. The Sheriff terminated Cummings' employment, asserting that he violated

4

several of the Manual's policies and was dishonest in the course of the investigation of the original charges against him.

¶ 9 After exhausting his remedies within the Sheriff's department, Cummings sued, asserting two claims for relief: wrongful discharge in violation of public policy and breach of an implied contract of employment based on the employment policies contained in the Manual.

¶ 10 Cummings contends that while the Sheriff informed him of the reasons for the initial investigation into his conduct, the Sheriff did not provide him with notice of the charges that eventually led to his termination. He also contends that the Sheriff denied him an adequate opportunity to defend himself by not following the procedural policies of the Manual during the disciplinary process.

¶ 11 The Sheriff moved to dismiss the wrongful termination claim under C.R.C.P. 12(b)(1) based on governmental immunity. The district court held a *Trinity* hearing on the wrongful discharge in violation of public policy claim and dismissed that claim with

prejudice.[2] *See Trinity Broad. of Denver v. City of Westminster*, 848 P.2d 916 (Colo. 1993).

¶ 12 After the district court denied the Sheriff's motion to dismiss the implied contract claim for failure to state a claim, the Sheriff moved for summary judgment. He contended that the at-will language in section 30-10-506 prevented him from promulgating binding personnel policies; that the disclaimers contained both in the Manual itself and in separate, yearly disclaimers signed by Cummings precluded as a matter of law any implied contract claim; and that, in any event, he had not violated any of the Manual's policies.

¶ 13 The district court denied the Sheriff's motion, holding that there was an implied contract of employment. The district court reasoned that it was illogical to conclude that the General Assembly would at once require sheriffs to promulgate employment policies, but then authorize sheriffs to wholly ignore them. Thus, the court held that *all* provisions in an employment manual promulgated by a sheriff pursuant to section 30-10-506 were binding and formed an implied

---

[2] That claim is not before us on this interlocutory appeal.

6

employment contract. As to the disclaimers, the court ruled that they were ineffective because they could not countermand the statutory requirement that the policies be binding. And, as to the Sheriff's argument that he did not violate any of the policies, the court concluded that disputed issues of material fact precluded summary judgment.

¶ 14 Although ordinarily an order denying summary judgment is not a final appealable order, the Sheriff petitioned for an interlocutory review of the order. Recognizing the internal conflicts within the statute, the district court certified its summary judgment order for interlocutory appeal under C.A.R. 4.2. Agreeing with the district court that the Sheriff met the requirements for an interlocutory appeal, and that this is a matter of substantial public concern, we granted the petition.

### III. The District Court Correctly Denied The Sheriff's Motion for Summary Judgment With Respect To The Specific Rights Granted by Section 30-10-506

¶ 15 For the same three reasons that he sought summary judgment in the district court, the Sheriff contends that the court erred in denying his motion for summary judgment.

## A. Standard of Review

¶ 16 We review a grant (or, when authorized by law, a denial) of summary judgment de novo. *Geiger v. Am. Standard Ins. Co. of Wisc.*, 192 P.3d 480, 482 (Colo. App. 2008) (holding that we review a denial of summary judgment de novo). "Under C.R.C.P. 56(c), summary judgment may be granted if there is no genuine contested issue of material fact and the moving party is entitled to judgment as a matter of law." *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1212 (Colo. 2008). We grant the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolve all doubts against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999).

## B. Rules of Statutory Interpretation

¶ 17 Resolution of this appeal requires us to determine the meaning of section 30-10-506, which is a question of law that we review de novo. *Wolf Ranch, LLC v. City of Colorado Springs*, 220 P.3d 559, 563 (Colo. 2009).

¶ 18 In interpreting a statute, we first give the words and phrases of the statute their plain and ordinary meanings according to the rules

of grammar and common usage.  § 2-4-101, C.R.S. 2017; *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).  We consider the words and phrases of the statute both in the context of the statute itself and in the context of any comprehensive statutory scheme of which the statute is a part.  *Jefferson Cty. Bd. of Equalization*, 241 P.3d at 935.  By applying these principles, we attempt to determine the General Assembly's intended meaning of the words and phrases, and harmonize that meaning with the comprehensive statutory scheme.  *Id.*

¶ 19 If the statutory language is susceptible to only one reasonable meaning, we enforce it as written and do not resort to other rules of statutory construction.  *Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo. 1997).  However, if a statute is susceptible to more than one reasonable meaning, we employ other tools of statutory interpretation, including legislative history, to ascertain the General Assembly's intent.  *People v. Luther*, 58 P.3d 1013,1015 (Colo. 2002).

C.    The Implied Contract Exception to At-Will Employment

¶ 20 In Colorado, an employee who is hired for an indefinite period is presumed to be an at-will employee, but this presumption may be

rebutted. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987).

¶ 21 Policies contained in an employee manual addressing discipline or the termination of employment may, under some circumstances, serve as the basis for claims of either a breach of implied contract or promissory estoppel. *Id.* These claims may be asserted by both private and public employees. *Adams Cty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 694 (Colo. 1990).

¶ 22 Employees claiming a breach of an implied contract of employment based on an employee manual bear the burden of rebutting the presumption of at-will employment. *Keenan*, 731 P.2d at 711. To do so, they must demonstrate:

> first, that in promulgating the termination procedures the employer was making an offer to the employee — that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain, Restatement (Second) of Contracts § 24 (1981) — and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.

*Id.*

## D. Analysis

### 1. Binding Personnel Policies May Be Promulgated by the Sheriff Under Section 30-10-506

¶ 23 Relying on *Seeley*, the Sheriff contends (and the special concurrence apparently agrees) that the retention of the at-will employment concept in the statute requires us to hold that *all* policies promulgated by a sheriff relating to the termination of deputy sheriffs' employment are only precatory. To conclude otherwise, according to the Sheriff, would write out of the statute the Sheriff's statutory power to terminate at will the employment of a deputy.

¶ 24 For two reasons, we reject the Sheriff's interpretation of section 30-10-506. First, it is inconsistent with the statute's conferral on the deputies of at least two due process rights. Second, based on the amended statutory language, we have no doubt that the General Assembly legislatively partly overruled *Seeley*. *See* Hearings on H.B. 1181 before the H. Local Gov. Comm., 65th Gen. Assemb., 1st Sess. (Feb. 7, 2006).

¶ 25 When it amended section 30-10-506, the General Assembly combined two contradictory concepts — at-will employment for

11

deputies, on the one hand, and the requirement that sheriffs provide at least some binding employment rights to their deputies, on the other. These inherent contradictions render the statute susceptible to at least two reasonable understandings; thus, it is ambiguous. *People v. Jones*, 2015 CO 20, ¶ 10.

¶ 26 Our job is to rationally construe the statute to give effect to all, not just some, of the words of the statute and to recognize the legislative intent to overrule *Seeley* in part. *Luther*, 58 P.3d at 1015.

¶ 27 The statute unambiguously confers two due process rights on the deputies: "Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff." § 30-10-506.

¶ 28 But the statute does more. It also requires sheriffs to "adopt personnel policies, including policies for the review of revocation of appointments." *Id.* The statute says nothing about whether any employment policies promulgated by sheriffs, beyond notice and a right to be heard, must be binding on the sheriff. We agree with the Sheriff that a construction of the statute that *all* such policies are

binding ignores and essentially writes out the at-will employment language. This is what the district court's construction of the statute did, but neither the district court nor this court has that authority. *Jefferson Cty. Bd. of Equalization*, 241 P.3d at 935.

¶ 29 But, if all of the policies, save the two due process rights identified above, were precatory, then the at-will employment relationship, though modified somewhat, would be preserved.

¶ 30 In *Seeley*, the supreme court held that the prior version of the statute simply did not authorize a sheriff to limit his right to fire his deputies at will. 791 P.2d at 700. But the amendments to the statute overruled that holding, at least in part. Hearings on H.B. 1181 before the H. Local Gov. Comm., 65th Gen. Assemb., 1st Sess. (Feb. 7, 2006). While the statute does confer on the deputies two binding due process rights, nothing in the statute expressly requires that *all* policies adopted by the sheriff are binding.

¶ 31 We reject the district court's reasoning that it is illogical for the General Assembly to require the promulgation of employment policies and then permit the sheriff to ignore at least some of those policies. As a division of this court observed in *Jaynes v. Centura Health Corp.,* precatory employment policies are not useless; they

13

may serve as "guidelines" for the employer, managers, and his employees. 148 P.3d 241, 249 (Colo. App. 2006). We thus reject the district court's conclusion that only binding employment policies are meaningful and that all employment policies promulgated by the Sheriff must be binding.

¶ 32 But that does not mean that the Sheriff is prohibited by section 30-10-506 from promulgating binding employment policies.

¶ 33 To summarize, the amended statute requires a sheriff to promulgate written employment policies. The sheriff must give his deputies the rights of notice and opportunity to be heard. Other employment policies promulgated by the sheriff may be, but are not required to be, binding. And if the sheriff elects to confer binding employment rights on his deputies, those rights are enforceable in accordance with their terms.

¶ 34 In this way, "we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v.*

*Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

¶ 35 Our construction of section 30-10-506 finds support in the United States District Court for the District of Colorado's decision in *Tonjes v. Park County Sheriff's Office*, the only published case that has addressed the 2006 version of section 30-10-506. 300 F. Supp. 3d 1308 (D. Colo. 2018).

¶ 36 In *Tonjes*, as here, a sheriff's deputy contended that the sheriff was bound by the employee manual's policies, while the sheriff argued that section 30-10-506 and the manual's disclaimer precluded the formation of an implied contract of employment. *Id.* at 1319-20. Consistent with our holding, the federal court held that because of the 2006 amendments to section 30-10-506, sheriffs have "the ability to adopt policies that limit [their] power to terminate (demote, discipline, etc.) employees at will." *Id.* at 1319.

    2.    The Written Disclaimers Preclude an Implied Contract Claim as a Matter of Law, Except as to the Due Process Rights Conferred by Statute and by Those Terms in the Manual

¶ 37 The Sheriff next argues that, even if section 30-10-506 permits sheriffs to promulgate binding personnel policies, the disclaimers in both the Manual and the separate yearly disclaimers signed by

15

Cummings preclude, as a matter of law, the formation of an implied contract of employment.

¶ 38 The Manual included the following disclaimer:

> These guidelines do not alter the at-will status of employees of the Sheriff. The Sheriff may terminate members or revoke deputy appointments at will, with or without cause. No portion of these guidelines or policies shall constitute a contract of employment, either express or implied, between the Sheriff and the member, or the County and the member, nor is it a guarantee of employment for a specific term or duration.

Additionally, once a year, Cummings signed a form that reiterated the terms of this disclaimer and stated:

> **THE SHERIFF'S OFFICE DETENTION DIVISION MANUAL IS NOT INTENDED TO BE, NOR DOES IT CONSTITUTE A CONTRACT BETWEEN THE ARAPAHOE COUNTY SHERIFF AND ANY OF HIS EMPLOYEES. ALL ARAPAHOE SHERIFF EMPLOYEES ARE AT-WILL EMPLOYEES.** *All Arapahoe County Sheriff employees have the right to end their work relationship with organization with or without advance notice or cause. The Arapahoe County Sheriff has the same right to end the relationship.*

¶ 39 Whether a contract disclaimer is clear and conspicuous is a question of law for the court. *Jaynes*, 148 P.3d at 248. The disclaimers in most of the yearly forms signed by Cummings were

16

written in capitalized letters, bolded, and underlined. We need not determine whether the disclaimer in the Manual is clear and conspicuous, because the disclaimers in the yearly forms undoubtedly are clear and conspicuous under Colorado law. *Id.*

¶ 40 We next must determine whether these clear and conspicuous disclaimers preclude, as a matter of law, Cummings' implied contract claims. Except with respect to the rights expressly granted to the deputy sheriffs by statute, we hold that they do.

### a. The Manual's Notice of Charges and Opportunity to be Heard Employment Policies

¶ 41 In his response to the Sheriff's summary judgment motion, Cummings specifically contended that the Sheriff violated the Manual's policy (and the statutory mandate) requiring that deputies receive timely notice of the reason for their proposed termination. While Cummings appears to concede that he received timely notice of the *initial* charges against him, he contends that he did *not* receive proper, timely notice of the additional charges that actually led to his termination.

¶ 42 As we held above, a deputy's right to notice and an opportunity to be heard are explicitly protected by section 30-10-506. To the

17

extent the Manual enforces these statutory rights, the Manual may form the basis of an implied contract claim.

¶ 43 Parties may not contract to abrogate statutory requirements and thereby contravene the public policy of this state. *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 492 (Colo. 1998). "A contract provision that violates public policy by diluting, conditioning or unduly limiting statutory coverage may be declared void and unenforceable." *Id.* Thus, to the extent the disclaimers purport to waive, as a condition of public employment, the deputies' rights to notice and the opportunity to be heard, they contravene the express terms of section 30-10-506 and are void as against public policy. *See id.*

¶ 44 Cummings claims that he did not receive the required notice of the charges that led to his dismissal, and the Sheriff disputes that interpretation of the record. Because the material facts on this question are disputed, a trier of fact (in this case a jury) must determine whether the Sheriff violated the Manual's policies regarding notice of the charges against Cummings.

### b. Other Policies in the Manual and the Disclaimers

¶ 45 Many of the policies contained in the Manual are worded in mandatory terms. We now address the purported conflict between the disclaimers and the mandatory language used in some of the policies, other than those that effectuate the due process rights conferred by section 30-10-506.

¶ 46 Several reported Colorado Court of Appeals cases have addressed this conflict, but the Colorado Supreme Court has not.

¶ 47 In *Allabashi v. Lincoln National Sales Corp. of Colorado-Wyoming,* 824 P.2d 1, 3 (Colo. App. 1991), although the employee handbook contained a disclaimer of any contractual rights, other documents provided to Allabashi contained termination procedures and policies requiring just cause for termination. Allabashi testified that she relied on those policies and procedures. *Id.* Relying on *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo. App. 1988), and distinguishing *Ferrera v. Nielsen,* 799 P.2d 458 (Colo. App. 1990), the division held that the trial court did not err in submitting the implied contract claim to the jury. *Allabashi,* 824 P.2d at 3.

¶ 48 In *Cronk,* the manual set "forth certain express events which might cause the employee to be terminated. In addition, the

manual state[d] that other reasons, not so expressed, could be grounds for termination, 'as long as such legitimate reasons constitute just cause.'" 765 P.2d at 623. Noting that "[t]he disclaimer upon which the trial court relied was added after the plaintiffs commenced their employment with IREA," and that in their summary judgment affidavits, the "plaintiffs asserted that they had relied on the employee manual provisions concerning termination," the division held that the trial court erred in granting summary judgment to the employer. *Id.*

¶ 49 In *Ferrera*, 799 P.2d at 461, the division appears to have reached a conclusion contrary to that reached in *Allabashi*. Ferrera brought an action alleging wrongful discharge and both implied contract and promissory estoppel claims based on the employee handbook. *Id.* at 459. The district court granted summary judgment to the employer on the implied contract claim, based on a disclaimer contained in the handbook.

¶ 50 The division affirmed on two bases. *Id.* at 459-61. First, the division concluded that the handbook did not either expressly require just cause for dismissal or prescribe a progressive discipline process. *Id.* at 461. Rather, the handbook expressly reserved the

right to discharge an employee whose conduct "in the opinion of the Company" warrants it. *Id.*

¶ 51 Second, the division held that "[s]ummary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Id.* Concluding that the disclaimer was both "sufficiently clear" and "sufficiently conspicuous," the division affirmed the summary judgment. *Id.*

¶ 52 More recently, a division addressed this question in *Evenson v. Colorado Farm Bureau Mutual Insurance Co.*, 879 P.2d 402 (Colo. App. 1993). Citing *Ferrera,* the division stated "[s]uch a manifestation of willingness to be bound can be inferred if there is no disclaimer in the manual stating that it does not constitute a contract or if such disclaimer, though present, is not clear and conspicuous." *Id.* at 409. But then, the division proceeded to say that "[f]urthermore, even if there is a disclaimer in the manual, an employer may nevertheless be found to have manifested an intent to be bound by its terms if the manual contains mandatory

termination procedures or requires 'just cause' for termination."[3]

*Id.*

¶ 53 If employees could not reasonably construe anything in the manual as a promise of either procedural or substantive employment rights, an implied contract claim fails irrespective of whether there was a clear and conspicuous disclaimer. *Jaynes,* 148 P.3d at 248; *George v. Ute Water Conservancy Dist.,* 950 P.2d 1195, 1198 (Colo. App. 1997).[4] This is so because a fundamental requirement of all contracts is that the terms of a contract "must be sufficiently definite to enable the court to determine whether the contract has been performed or not." *Stice v. Peterson,* 144 Colo.

---

[3] Later in the opinion, the division suggests another basis for its decision: "[W]hile the disclaimer provisions[] are clear, they were not emphasized. Indeed, they contain nothing to make them conspicuous." *Evenson v. Colo. Farm Bureau Mut. Ins. Co.,* 879 P.2d 402, 409 (Colo. App. 1993).

[4] In both *Jaynes v. Centura Health Corp.,* 148 P.3d 241, 248 (Colo. App. 2006), and *George v. Ute Water Conservancy Dist.,* 950 P.2d 1195, 1198 (Colo. App. 1997), divisions of this court were able to avoid either reconciling or disagreeing with the cases cited above. In both of those cases, the divisions concluded that the plaintiffs failed to cite policies in the employers' manuals that could be construed as a promise of either procedural or substantive rights and thus failed to show that the manuals created an implied contract or were binding on promissory estoppel principles. *Jaynes,* 148 P.3d at 248; *George,* 950 P.2d at 1198.

219, 224, 355 P.2d 948, 952 (1960) (quoting *Newton Oil Co. v.*

*Bockhold*, 115 Colo. 510, 518, 176 P.2d 904, 908 (1946)); *see also*

*Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166

P.3d 259, 262 (Colo. App. 2007). If the disclaimer is *not* clear and

conspicuous, it is wholly ineffective to displace promises contained

in the handbook that are relied on by the employees. *See Ferrera*,

799 P.2d at 461.

¶ 54 To the extent that some divisions of this court have held that

even when the disclaimer *is* clear and conspicuous, the case

nevertheless goes to the jury, we cannot subscribe to that result

because it gives insufficient weight to a clear and conspicuous

disclaimer.[5] *See People v. Smoots*, 2013 COA 152, ¶ 20 (holding

---

[5] We do not eliminate the possibility that evidence other than the employee manual and the disclaimer could result in a factual question of whether an implied contract has been formed. Indeed, these facts seem to be in play in *Evenson*, 879 P.2d at 409, where the division referred to testimony by the company's managers to the effect that they regarded the disciplinary procedures as mandatory and treated them as mandatory. Whether viewed as an amendment to or an implied revocation of the disclaimer, facts such as those may well preclude summary judgment and require the fact finder to ultimately determine whether an implied contract was created. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986) ("[I]t is for the jury to determine whether the parties have entered into a contract."). But Cummings neither pleaded

23

that we are not bound by the decisions of other divisions of this court).  That result also is not faithful to supreme court cases that have repeatedly reaffirmed the doctrine of at-will employment in Colorado (subject to several enumerated exceptions).  *See, e.g., Keenan,* 731 P.2d 708.

¶ 55 The purpose of a disclaimer is to inform the employee that the employer is *not* making contractual promises and that the employee remains an employee at will.  It is difficult to understand how a reasonable employee could believe that the employer has made contractual promises in the face of a clear and conspicuous disclaimer that says exactly the opposite.

¶ 56 Thus, we hold that when a clear and conspicuous disclaimer informs an employee that he or she cannot reasonably rely on termination procedures or substantive restrictions on termination contained in an employee manual, a claim based on an implied contract claim ordinarily fails as a matter of law.[6]

---

such circumstances nor supported his summary judgment opposition with such evidence.

[6] Because no promissory estoppel claim was pleaded in this case, we do not address the legal effects of clear and conspicuous disclaimers on such claims.

¶ 57 We acknowledge that courts in other states have reached widely varying results on this question. *See* Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers*, 13 Indus. Rel. L.J. 326 (1991-92) (collecting cases).

¶ 58 We perceive that the rule we apply here is the majority rule. *See Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) ("A disclaimer in an employee handbook, such as the one included by Federal Express, negates any implication that a personnel procedures manual places a restriction on the employment at will relationship."); *see also Davis v. Liberty Mut. Ins. Co.*, 218 F. Supp. 2d 256 (D. Conn. 2002); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277 (Iowa 1995); *Byrd v. Imperial Palace of Miss.*, 807 So. 2d 433 (Miss. 2001); *Woolley v. Hoffmann-La Roche, Inc.*, 491 A.2d 1257 (N.J. 1985), *modified*, 499 A.2d 515 (N.J. 1985); *Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh*, 610 A.2d 495 (Pa. Super. Ct. 1992); *Bine v. Owens*, 542 S.E.2d 842 (W. Va. 2000); *Bear v. Volunteers of Am., Wyo., Inc.*, 964 P.2d 1245 (Wyo. 1998).

¶ 59 Other states hold that the existence of a disclaimer, even one that is clear and conspicuous, is but one factor in determining whether an employee manual forms an implied contract. *See, e.g.,*

*Brace v. Int'l Bus. Machs. Corp.*, 953 F. Supp. 561, 567 (D. Vt. 1997); *Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 58 P.3d 1196 (Haw. 2002); *Lee v. Canuteson*, 573 N.E.2d 318 (Ill. App. Ct. 1991); *Hunt v. Banner Health Sys.*, 720 N.W.2d 49 (N.D. 2006); *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331 (Utah 1992).

¶ 60 In view of the indisputable presence of clear and conspicuous disclaimers, we need not determine whether the Manual, in fact, creates sufficiently definite promises or rights capable of enforcement under contract law. As a matter of law, these disclaimers preclude a successful implied contract claim based on any rights other than those that effectuate the specific due process rights granted by section 30-10-506.

## IV.   Conclusion

¶ 61 That part of the district court's summary judgment order permitting Cummings to pursue an implied contract claim based on rights conferred in the Manual that effectuate the due process rights granted by section 30-10-506 is affirmed. In all other respects, the district court's summary judgment order is reversed, and on remand the court is directed to grant the Sheriff's motion for summary judgment to that extent.

JUDGE FREYRE concurs.

JUDGE BERNARD specially concurs.

JUDGE BERNARD, specially concurring.

¶ 62 I agree with the result that the majority reaches: although the district court properly denied the sheriff's motion for summary judgment concerning two statutory rights created by section 30-10-506, C.R.S. 2017, it erred when it denied the rest of the sheriff's motion. But, as I explain below, I employ a different rationale to reach the same result.

## I.    Introduction

¶ 63 When interpreting a statute, a court focuses on its plain language, "construing words and phrases according to the rules of grammar and common use." *Roberts v. Bruce*, 2018 CO 58, ¶ 8. The court's "central task is to give effect to the General Assembly's intent." *Id.* "To this end, [the court will] read the statute as a whole and seek to give consistent, harmonious, and sensible effect to all its parts." *Id.* "The plain language of the statute is the best indication of legislative intent, and clear and unambiguous language eliminates the need to resort to other principles of statutory construction such as legislative history . . . ." *People v. J.J.H.*, 17 P.3d 159, 162 (Colo. 2001).

¶ 64 "If a statute is clear and unambiguous on its face, then [the court] need not look beyond the plain language and must apply the statute as written." *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 979 (Colo. App. 2007). To put it another way, if a court can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written "since it may be presumed that the General Assembly meant what it clearly said." *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo. 1989). If a statute is unambiguous, a court does not "resort to legislative history or further rules of statutory construction." *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010).

¶ 65 My analysis in this case would begin and end with the language of section 30-10-506, which I will refer to as "section 506." As I explain below, I think that this language clearly and unambiguously describes a legislatively mandated rule that has been in effect in Colorado since 1877: sheriffs have the authority to fire their deputies at will.

¶ 66 Although the legislature amended section 506 in 2006, I do not believe that the amendments altered this rule. I recognize that the legislature may have *intended* to eliminate the rule and to

completely overrule *Seeley v. Board of County Commissioners*, 791 P.2d 696, 699 (Colo. 1990). But it is my respectful view that the plain language that the legislature employed in section 506 achieved those purposes *only to the extent* that section 506 created two specific statutory rights, while it otherwise preserved the authority of sheriffs to fire deputies at will. For the purposes of this case, this means that the rules in the sheriff's personnel manual did not, and could not, override the sheriff's explicit statutory authority to fire the former deputy.

II. Comparison of the 1877 Statute and Section 506

¶ 67 As is pertinent to my analysis, the 1877 statute stated: "Each sheriff may appoint such and so many deputies as he may think proper . . . and may revoke such appointments at his pleasure." G.L. 1877, § 493.

¶ 68 The language that the legislature adopted in 1877, with a few minor changes, remained in effect for 129 years. *See* Ch. 43, sec. 1, § 30-10-506, 2006 Colo. Sess. Laws 133 (showing that, before the 2006 amendment, the statute read, "Each sheriff may appoint as many deputies as he may think proper . . . and may revoke such appointments at his pleasure.").

¶ 69 As a result of the legislature's 2006 amendments, section 506 now says:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

¶ 70 Comparing judicial descriptions of employees who serve at the pleasure of an employer and of at-will employees, I conclude that there is no significant difference between them. "An employee who serves 'at the pleasure' of his employer generally may be discharged at any time without cause or formal procedure." *Johnson v. Jefferson Cty. Bd. of Health*, 662 P.2d 463, 471 (Colo. 1983). An at-will employee "may be terminated by either [the employee or the employer] without cause and without notice." *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997)(quoting *Cont'l Airlines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)).

¶ 71 Our supreme court has carefully analyzed the language of the 1877 statute in a series of cases. I explain those opinions next.

### III. Cases Analyzing the 1877 Statute

¶ 72 Because counties are political subdivisions of the State of Colorado, they only have "such powers as are expressly conferred . . . by the constitution and statutes, and such incidental implied powers as are reasonably necessary to carry out such express powers." *Bd. of Cty. Comm'rs v. Love*, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970), *superseded by statute on other grounds*, Ch. 213, 1979 Colo. Sess. Laws 843. In other words, a county department, "as a political subdivision of the state, may not by rule or regulation abdicate the authority and responsibility delegated to it by the legislature." *Johnson*, 662 P.2d at 471.

¶ 73 As a result, "a local government may not forbid that which the state has explicitly authorized." *Id.* This means that, if the legislature has given a county official the authority to terminate employees at will, then a county's personnel rules "do not override the explicit statutory authority of the [official] to discharge [an employee]." *Id.*

¶ 74 *Seeley*, 791 P.2d at 699, applied these principles when considering the language of the 1877 statute. The supreme court concluded that this plain language meant that a sheriff could not,

32

via the sheriff's personnel policies collected in a personnel manual, "limit his power to terminate deputy sheriffs." *Id.* at 700. Those policies, the supreme court thought, contravened the 1877 statute, and, by doing so, the policies sought to "forbid that which the state has explicitly authorized." *Id.* (quoting *Adams Cty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 690 (Colo. 1990)). To put it another way, the 1877 statute "did not authorize [the sheriff] to limit his statutory power to discharge deputy sheriffs at his pleasure." *Id.*

¶ 75 *Seeley* held that a local government entity, such as a sheriff's office, "may limit its power to terminate employees if it possesses the requisite statutory authority to do so." *Id.* at 699. Only the legislature can provide the "requisite statutory authority."

¶ 76 So what does such "statutory authority" look like? *Dickey* provides one example. In that case, a statute "authorize[d] school boards to adopt written policies, rules and regulations." *Dickey*, 791 P.2d at 692. The subjects of the rules and regulations were "inherently related to practices affecting the employment, promotion, and dismissal of personnel." *Id.* The statute did not require school boards "to adopt employment termination procedures," but "if they cho[]se to do so the promulgation of such

33

procedures constitute[d] an authorized exercise of the powers granted to school boards" by the statute. *Id.*

¶ 77 The supreme court was careful to point out that the statutory language in *Dickey* "differ[ed] significantly from statutory provisions which have been held to override employment termination procedures established by local governments." *Id.* The court listed three cases to support this distinction.

¶ 78 In *Johnson,* the statute stated that a county public health officer "shall be appointed by the board [of health] to serve at the pleasure of the board." 662 P.2d at 471 (quoting § 25-1-505(1), C.R.S. 1973). The supreme court thought that this language "expressed the legislature's judgment that county boards of health should have the authority to discharge county public health officers 'at any time without cause or formal procedure.'" *Dickey*, 791 P.2d at 692 (quoting *Johnson,* 662 P.2d at 471).

¶ 79 In *Kennedy v. Board of County Commissioners*, 776 P.2d 1159, 1160 (Colo. App. 1989), a statute read that "[a]ny persons appointed to such offices shall serve at the pleasure of the board of county commissioners." A division of the court of appeals noted

that this language "define[d] the employee as terminable at will and [it] supersede[d] any county declaration to the contrary." *Id.*

¶ 80 And, in *Seeley*, the supreme court considered the language in the predecessor statute to section 506 that we have quoted above: "Each sheriff may appoint as many deputies as he may think proper . . . and may revoke such appointments at his pleasure." 791 P.2d at 699 (quoting § 30-10-506, C.R.S. 1986). The court in *Dickey* decided that this language made "deputy sheriffs employees at will," and, as a result, sheriffs had "no power to alter the employment status of deputy sheriffs through the promulgation of employee manuals." 791 P.2d 692.

### IV. Interpretation of Section 506

¶ 81 Applying the principles of statutory construction that I described in the Introduction, I conclude that the language in section 506 is plain and clear. I think that it continues the legislatively mandated rule that appeared in the 1877 statute: a sheriff may terminate a deputy's appointment "at will." This means that a sheriff may fire a deputy "without cause and without notice," *Crawford Rehab. Servs., Inc.*, 938 P.2d at 546, and that such a decision "does not give rise to a cause of action," *Dickey*, 791 P.2d at 691.

¶ 82 Next, the legislature also has the authority to "create[] exceptions to the employer's general right to terminate an employee at-will." *Crawford Rehab. Servs., Inc*, 938 P.2d at 546. I find two of those exceptions in section 506: a sheriff must give a deputy (1) notice of the reason why he or she is firing the deputy; and (2) an opportunity "to be heard by the sheriff." In other words, section 506 limits a sheriff's at-will authority to fire a deputy in these two ways. *See Crawford Rehab. Servs., Inc.*, 938 P.2d at 546.

¶ 83 But what is the effect of the language in section 506 that requires sheriffs to adopt policies "for the review of revocation of appointments"? Does it set out additional exceptions to "the employer's general right to terminate an employee at-will"? *Crawford Rehab. Servs., Inc.*, 938 P.2d at 546. I would answer the second question "no."

¶ 84 The requirement that a sheriff must adopt policies for reviewing the decision to fire a deputy is not accompanied by language stating that a sheriff is bound by those policies, or that the sheriff must "follow" or "comply with" them, or that they "control," "modify," or "limit" the sheriff's discretion to fire deputies at will. And I cannot add such language to section 506 in the course of interpreting it.

*Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 85 ("[W]hen interpreting a statute, 'we must accept the General Assembly's choice of language and not add or imply words that simply are not there.'" (quoting *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009))); *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010)("[W]e will not interpret a statute to mean that which it does not express.").

¶ 85 So what purpose does the requirement in section 506 that sheriffs adopt policies "for the review of revocation of appointments" serve? I conclude that the policies are "discretionary rather than mandatory termination procedures," *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 249 (Colo. App. 2006), because the requirement is not accompanied by statutory language requiring sheriffs to follow the policies. *Cf. Kreimeyer v. Hercules, Inc.*, 892 F. Supp. 1374, 1378 (D.C. Utah 1994) (discretionary personnel policies were guidelines or a management tool and did not create an implied employment contract).

¶ 86 Because I conclude that the legislatively mandated at-will employment rule survived the 2006 amendments, I think the supreme court cases that interpreted the 1877 statute still apply to

this case. I would therefore additionally conclude that, although the legislature amended the 1877 statute in 2006, the continued presence of the legislatively mandated at-will employment rule in section 506 means that the resolution of this case is controlled by *Seeley* instead of *Dickey.* As the supreme court pointed out in *Seeley*, the 1877 statute "explicitly authorize[d] . . . sheriffs to discharge deput[ies] . . . at their pleasure." 791 P.2d at 699. Section 506 does the same thing. So section 506 "did not authorize [the sheriff] to limit his statutory power to discharge deput[ies] . . . at his pleasure." *Seeley*, 791 P.2d at 699-700; *see Johnson*, 662 P.2d at 471 ("We conclude . . . that the . . . personnel rules, even though adopted by the board of health, do not override the explicit statutory authority of the board to discharge a public health officer appointed by the board.").

¶ 87 Turning to the statute in *Dickey*, it did not make an explicit reference to school boards having the power to terminate employment at will, and it did not state that employees served at the pleasure of the school boards. Rather, it gave the school boards discretionary powers "[t]o discharge or otherwise terminate the employment of any personnel." *Dickey*, 791 P.2d at 691. Section

38

506 is different: it expressly gives sheriffs the authority to terminate deputies' employment at will by clearly stating that sheriffs "may revoke" the appointments of deputies "at will."

¶ 88 The supreme court observed in *Kennedy*, 776 P.2d at 1160, that statutory provisions such as section 506 "have been construed to bar claims for breach of contract based on assurances in an employee handbook under the rationale that such a statute defines the employee as terminable at will and the statute supersedes any county declaration to the contrary." *Accord Johnson*, 662 P.2d at 471 (A county's personnel rules "do not override the explicit statutory authority of the [official] to discharge [an employee].").  Relying on *Seeley*, *Kennedy*, and *Johnson*, I would therefore conclude that section 506 bars the deputy's claim in this case that the sheriff's employment policies, as embodied in the policy manual, created an implied employment contract that the Sheriff breached when he fired the deputy.

¶ 89 To summarize, reading the three components of section 506 together leads me to conclude that (1) the legislature preserved the rule that it first adopted in 1877 that sheriffs have the authority to terminate deputies' appointments at will; (2) this authority is now

subject to two exceptions and to two exceptions only; and, therefore, (3) the legislature made clear that sheriffs have "no [additional] power to alter the employment status of deputy sheriffs through the promulgation of employee manuals." *Dickey*, 791 P.2d at 692.

¶ 90 I would therefore, like the majority, (1) affirm the district court's order denying the sheriff's motion for summary judgment with respect to two specific statutory rights created by section 506; but (2) otherwise reverse the court's order denying the motion.